### The HOME INSURANCE COMPANY OF MANCHESTER, NEW HAMPSHIRE, Plaintiff,

v.

### Ruth K. PHILLIPS, as Trustee of Lauderdale Aviation, Inc., a dissolved Florida corporation; Kelli Jo Crist and David B. Crist; and Ruth K. Phillips, as personal representative of the Estate of Lewis Edward Phillips, Defendants.

No. 91–6488–CIV.

United States District Court, S.D. Florida.

March 2, 1993.

---

John Michael Murray, Thornton David Murray Richard & Davis, Miami, FL, for plaintiff.

Edward Royce Curtis, Curtis & Curtis, Fort Lauderdale, FL, for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the parties' Cross–Motions for Summary Judgment.

The Home Insurance Company of Manchester, New Hampshire ("Home") brought this action seeking a declaratory judgment that an Owners', Landlords' and Tenants' Liability Insurance policy issued by it to Lauderdale Aviation does not provide coverage for injuries arising out of an aircraft crash which occurred on August 25, 1988. The defendants filed a counterclaim alleging breach of the insurance contract, and requesting damages including reasonable attorneys fees and costs incurred in this action. The parties have filed cross-motions for summary judgment which have been fully briefed and are now ripe for ruling.

## I. The Facts

On August 25, 1988, following take-off from the North Perry Airport in Broward County, Florida, a 1979 twin engine Piper Aerostar crashed into the roof of a building occupied by Neway Printing. This building was located outside of the premises of North Perry Airport. The aircraft was piloted by Lewis E. Phillips, president and owner of Lauderdale Aviation. Mr. Phillips and his two passengers were fatally injured, and Kelli Jo Crist, an employee of one of the stores in the building, was injured.

In 1988, the Crists sued Lauderdale Aviation and the Estate of Lewis E. Phillips for personal injury damages and loss of consortium arising out of the August 25, 1988 crash. On May 18, 1990, the Crists voluntarily dismissed Lauderdale Aviation from the lawsuit. Subsequently, a consent judgment for $750,-000.00 was entered against Mrs. Ruth K. Phillips, as personal representative of the Estate of Lewis E. Phillips.

In August of 1990, the Crists filed a second complaint against Lauderdale Aviation. Final Judgment in this second action was entered against Lauderdale Aviation on May 23, 1991, after the parties agreed that the Crists would accept an assignment of rights under the insurance policy issued by Home. On May 31, 1991, after the Final Judgment was entered against Lauderdale Aviation, the Crists' counsel demanded that Home satisfy the judgment of $750,000.00 on behalf of Lauderdale Aviation. This action for declaratory judgment ensued.

## II. Discussion

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing that there is no genuine issue of material fact lies upon the moving party and it is a stringent one.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The parties do not dispute the facts which underlie this action. The only issue before the Court, therefore, is whether the insurance policy issued by Home provides coverage for the injuries arising out of the airplane crash which occurred on August 25, 1988.

■ The insurance policy issued by Home to Lauderdale Aviation provides "Owners', Landlords' and Tenants' Liability Insurance Coverage for Designated Premises and Related Operations in Progress Other Than Structural Alterations, New Construction and Demolition." Under the "Descriptions of Hazards" heading, the policy reads as follows:

**Premises—Operations**

That portion of the airport located at North Perry Airport, FL, in the care custody or control of the named insured.

The body of this policy states in pertinent part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the Insured premises and all operations necessary or incidental thereto....

In addition, the Airport Liability Endorsement, which was incorporated into the policy, provides:

It is hereby understood and agreed that such insurance as is afforded by the policy for bodily injury liability and for property damage liability applies to the ownership, maintenance or use of an airport by the named insured, including all operations necessary or incidental thereto....

The defendants argue that the policy provides coverage for the injuries sustained during the airplane crash, because the crash was an occurrence arising out of the operations necessary and incidental to the use of the property. According to the defendants, the maintenance, repair, inspection, and servicing of aircraft are operations necessary and incidental to the use of the insured premises as an "FBO". An "FBO" (fixed base operation) is a small plane gas and repair station which services private, nonscheduled aircraft at airports throughout the country. *Kemmons Wilson, Inc. v. FAA,* 882 F.2d 1041 (6th Cir.1989). Since the airplane crash resulted from Lauderdale Aviation's negligent maintenance, service and inspection of Phillips's aircraft, the defendants argue that the policy provides coverage for the resulting injuries.

Not surprisingly, Home disagrees. It argues that the policy issued to Lauderdale Aviation is a premises liability policy, not a general liability policy. Whereas the crash occurred outside of the insured premises, they contend that there is no coverage. Consequently, the Court must decide whether this premises liability policy covers injuries resulting from occurrences outside of the insured premises.

Although other courts have considered this issue, there is a definite lack of consensus as to the correct result. Some courts have held that a premises liability policy provided coverage for injuries arising out of the maintenance and use of the insured premises, despite the fact that the injuries occurred outside of these premises. *See, e.g. State Automobile and Casualty Underwriters v. Beeson,* 183 Colo. 284, 516 P.2d 623 (1973); *Sun Insurance Company of New York v. Hamanne et al.,* 113 N.H. 319, 306 A.2d 786 (1973). However, other courts, including one Florida appellate court, have held that injuries occurring outside the insured premises are not covered. *See American Empire Surplus Lines Insurance Co. v. Bay Area Cab,* 756 F.Supp. 1287 (N.D.California 1991), *Par-*

*liament Insurance Company v. Bryant,* 380 So.2d 1088 (Fla.App. 3 Dist.1980). According to these courts, the language "arising out of the ... use of the insured premises, and all operations necessary or incidental thereto" cannot convert a premises liability policy to a general liability policy.

The Court agrees with this latter position. In some cases, there may be circumstances which require a finding of coverage under such a policy, despite the fact that the actual injury occurred outside of the premises. This is not such a case, however, because the actions taken on the premises were not an immediate cause of the defendants' injuries. "Courts have consistently drawn a distinction between the immediate circumstances which inflict bodily injury and the antecedent negligence which sets in motion a chain of events leading to that injury." *American Empire* at 1290.

One can argue that the defendants' injuries "arose out of" the use of the premises, because service and inspection are a part of the insured's business on the premises, and the insured's negligent service and inspection resulted in a crash which resulted in the injuries. However, nearly all acts could be said to "arise out of the use of the insured premises" in the sense that all business actions either directly originate from or are ultimately attributable to the place of business. *American Empire* at 1289. Such an interpretation, therefore, would completely eliminate any distinction between premises liability and general liability policies. Obviously, such a result would be unacceptable.

■ Moreover, the policy issued by Home contained the following exclusion:

This insurance does not apply

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of ...

    (3) any aircraft owned by, rented to, loaned to or held for demonstration or sale by the insured....

Home contends that this exclusion applies because the Crists' injuries arose out of the ownership and operation of an aircraft by Lewis Edward Phillips. Although the policy

lists Lauderdale Aviation as the named insured, it also provides:

> "if the insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such [is an insured under the policy]."

Whereas Lewis Edward Phillips was the president and owner of Lauderdale Aviation, a corporation, at the time of the accident, Home contends that he was an insured under the policy. Accordingly, they argue that this exclusion precludes coverage for the Crists' injuries.

The defendants do not dispute that Mr. Phillips was "an insured" under the policy. However, they argue that the exclusion does not apply because Mr. Phillips was not "the insured." They discuss at length the difference between the word "an" and the word "the". They even cite Black's Law Dictionary's definition of the word "the," which outlines the distinction between "the" and "a" or "an." Although the Court is acutely aware of the distinction between "the" and "an," it nevertheless finds the defendants' arguments unconvincing. The intended meaning of the policy exclusion is clear.

Consequently, the Court finds that the Owners', Landlords', and Tenants' Liability Insurance policy issued by The Home Insurance Company of Manchester, New Hampshire, to Lauderdale Aviation does not provide coverage for the injuries arising out of the aircraft crash which occurred on August 25, 1988.

Accordingly, having reviewed the motion and the record, and being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED as follows:

(1) The plaintiff, The Home Insurance Company of Manchester, New Hampshire's Motion for Summary Judgment is GRANTED. The plaintiff shall file a form of judgment for entry in this cause within fifteen (15) days from the date of this order.

(2) The defendants' Motion for Summary Judgment is DENIED.

DONE AND ORDERED.