Audrey **BREDEMEIER,**
Plaintiff–Appellee,

v.

**FARMERS INSURANCE EXCHANGE,**
Defendant–Appellant.

**No. 96CA0977.**

Colorado Court of Appeals,
Div. III.

June 5, 1997.

Rehearing Denied July 10, 1997.

Certiorari Denied Feb. 2, 1998.

Bell & Pollock, P.C., Chad P. Hemmat, Littleton, for Plaintiff–Appellee.

Patterson & Nuss, P.C., Franklin D. Patterson, Englewood, for Defendant–Appellant.

Opinion by Judge JONES.

In this action to recover personal injury protection (PIP) benefits under an automobile insurance policy, defendant, Farmers Insurance Exchange (Farmers), appeals from a judgment in favor of plaintiff, Audrey Bredemeier, following a trial to the court. We reverse and remand the cause with directions.

While walking through a parking lot at night, plaintiff tripped and fell over a speed bump and was injured. She sought PIP benefits under a policy of insurance issued by Farmers for a vehicle owned by Richard and Joyce Larson. Plaintiff claims that her injuries arose out of the operation or use of the Larsons' vehicle because the position in

which the car had been parked caused it to block the light from a fixture on a nearby building that otherwise would have illuminated the speed bump. It is undisputed that the specific purpose of the fixture was not simply to cast light on the speed bump but that, under ordinary circumstances, if the light was not blocked it would have incidently illuminated the speed bump.

The trial court made the following factual findings regarding the accident:

> The Larson vehicle obstructed the light that otherwise illuminated the speed bump and . . . a passenger in the Larson vehicle . . . testified that he was very aware of the light illuminating the speed bump and witnessed the light being blocked from illuminating the speed bump after Mrs. Larson parked in the spot that she selected.

Because the trial court did not make any findings regarding whether the Larsons' vehicle was properly or negligently parked, we do not dwell on that issue.

It ultimately found "a sufficient nexus between the use of the motor vehicle being parked in that specific location and the reason that [plaintiff] fell" and awarded plaintiff PIP benefits under the Farmers policy.

The sole issue on appeal is whether, as Farmers contends, the trial court erred by finding as a matter of law that the accident arose out of the operation or use of the Larsons' vehicle. We agree with Farmers that the factual findings by the trial court do not support a conclusion that the accident arose out of the operation or use of the vehicle.

Although the Farmers policy is not included in the record on appeal, Farmers stipulated that it provided at least the minimum coverage required by the Colorado Auto Accident Reparations Act. Section 10–4–707(1)(c), C.R.S. (1996 Cum.Supp.) provides that coverage must be provided for "[a]ccidental bodily injury arising out of accidents occurring within this state . . . while a pedestrian *if injured in an accident involving the described motor vehicle.*" (emphasis added)

The parties do not dispute that plaintiff was a pedestrian; they dispute only whether the accident involved the Larsons' vehicle.

The supreme court has concluded that the general phrase "involving [a] motor vehicle" in § 10–4–707(1)(c) has the same meaning as the more specific phrase "arising out of the use or operation of a motor vehicle." Thus, in order for mandatory statutory coverage to apply, the plaintiff's accident must have arisen out of the use or operation of the Larson's vehicle. *See Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo. 1984).

Whether an accident is caused by the use of a vehicle must be determined on a case-by-case basis. "An accident occurs 'on account of the use of a motor vehicle' if the injury . . . [out of which] the . . . claim [arose] is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose." *Kohl v. Union Insurance Co.,* 731 P.2d 134, 135 (Colo.1986). To prove causation under such circumstances, a plaintiff need only show that the injury originated in, grew out of, or flowed from a use of a vehicle, not that the vehicle itself was the source of the injury. Thus, the vehicle need only be integrally related to the claimant's activities and the injury at the time of the accident. *Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo. 1995).

"An injury arises out of the use of a vehicle within the provisions of an automobile insurance policy when a causal connection is *reasonably apparent between the use to which the vehicle is being put and the resulting injury.*" G. Couch, *Cyclopedia of Insurance Law* § 45:56 (R. Anderson 2d ed.1981)(emphasis added).

For example, an injury occurring while unloading a truck is covered under the Act because the accident would not have occurred except for the unloading of the truck. *Titan Construction Co. v. Nolf,* 183 Colo. 188, 515 P.2d 1123 (1973) (injury received while unloading ready-mix concrete truck when hose connected to truck knocked brick off roof arose out of use of vehicle). Other examples include *Trinity Universal Insurance Co. v. Hall, supra* (coverage extended to plaintiff who was injured by a part of a truck that was being used to sell refresh-

ments) and *Aetna Casualty & Surety Co. v. McMichael, supra* (truck with flashing warning lights being used as a barricade or warning device was "in use" when a plaintiff was struck by a car while working in front of the truck).

These cases are distinguishable from the case at hand, however, because they involved injuries arising out of activities in which the plaintiffs were engaged that employed vehicles within their inherent purposes, even though parked.

PIP benefits are not triggered simply because an injury takes place in or around a vehicle. The supreme court has stated:

[I]t is generally held that there must be a causal relation or connection between the injury and the use of the vehicle in order for the injury to come within the meaning of the phrase 'arising out of the use' of a vehicle.... Use, as contemplated by the automobile liability policy, means *use of a vehicle as such,* not a use foreign to its inherent purpose, to which the vehicle might conceivably be put.

*Azar v. Employers Casualty Co.,* 178 Colo. 58, 61, 495 P.2d 554, 555 (1972)(original emphasis)(injury caused to passenger when shotgun discharged as driver pulled weapon back into car after preparing to shoot at rabbit from car window did not arise out of use of auto). *See also Mason v. Celina Mutual Insurance Co.,* 161 Colo. 442, 423 P.2d 24 (1967) (death occurring from discharge of pistol while three youths were toying with the weapon in insured's vehicle did not arise out of a covered use of vehicle).

We find guidance for resolution of this case in *State Automobile & Casualty Underwriters v. Beeson,* 183 Colo. 284, 516 P.2d 623 (1973). There, a child was injured when keys to a second vehicle were thrown from a third story window, fell through an open window of a parked car, and struck the child who was sitting inside. The supreme court found that causal connection there between the injury and the use of either vehicle to be too weak to trigger insurance coverage for injuries arising out of the use of an automobile.

We find further guidance in certain cases of foreign jurisdictions that have considered whether a sufficient nexus exists between the injury and the insured vehicle, while unoccupied and stationary, as to regard the injury as arising from the "use" of the vehicle. *See Wooster v. Soriano,* 167 A.D.2d 233, 561 N.Y.S.2d 731 (1990)(pedestrian's injury did not arise out of use of parked truck on public street that obstructed pedestrian's view of traffic); *Nassau Insurance Co. v. Jiminez,* 116 Misc.2d 908, 456 N.Y.S.2d 654 (1982)(when claimant entered store to flee electrical hazard caused by insured vehicle that hit pole, then she was injured by tripping over counter, injury not related to use of vehicle); *McConnell v. Fireman's Fund American Insurance Co.,* 49 A.D.2d 676, 370 N.Y.S.2d 730 (1975)(snowmobile driver not entitled to coverage for loss arising out of use of automobile where his snowmobile hit unoccupied, locked automobile parked on public street in front of automobile owner's home).

■ Here, as similarly analyzed in *State Automobile & Casualty Underwriters v. Beeson, supra,* under different facts, there is no integral relationship that is reasonably apparent between plaintiff's action of walking through the parking lot and tripping over a speed bump and any use of the Larsons' locked, unoccupied, parked vehicle that happened, as a matter of natural, physical law, to be casting a shadow. Accordingly, we determine as a matter of law that plaintiff was not injured in an accident involving a covered use of the described motor vehicle, and the trial court erred in finding that § 10–4–707(1)(c) mandated coverage under the facts presented in this matter.

The judgment is reversed and the cause is remanded with directions to enter judgment in favor of Farmers.

PLANK, J., concurs.

RULAND, J., dissents.

Judge RULAND dissenting.

Because I conclude that the trial court was correct in its application of the law in this case, I respectfully dissent.

The issue whether insurance coverage is available for an accident involving the opera-

tion and use of a motor vehicle has arisen in a number of different contexts. Resolution of this issue requires the court first to determine whether the motor vehicle was in "use" as that term is interpreted under the policy and then to decide whether that use was causally related to the accident. *Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo.1995).

With reference to the first issue, the *Aetna* court reaffirmed that "use" of the motor vehicle has a broader meaning than operation of the vehicle for transportation purposes. And, the vehicle need not even be occupied at the time of the accident. Thus, for example, the use may involve parking the vehicle as a barricade in a construction area as in *Aetna* or it may involve parking the vehicle in order to sell refreshments. *Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984). In sum, as noted by the majority, unless the vehicle's use at the time of the accident "is foreign to its inherent purpose," insurance coverage may be available. *Kohl v. Union Insurance Co.,* 731 P.2d 134 (Colo.1986).

Here, I agree with the trial court that the use of a vehicle includes parking it in a specific location in order to gain prompt access to a high school. *See Aetna Casualty & Surety Co. v. McMichael, supra; see also Kolkin v. American Family Insurance Co.,* 347 N.W.2d 538 (Minn.App.1984)(involving a stalled vehicle parked so that it protruded into the roadway).

Specifically, the vehicle in this case was parked in a cross-hatched area of a parking lot in order for the owners to attend and later return home from a graduation ceremony. And, to hold, as the majority opinion implies, that a motor vehicle is no longer in use if it is parked and unoccupied unduly limits insurance coverage for accidents caused by the manner in which the vehicle has been parked in any public thoroughfare or area.

With reference to whether the vehicle's use is causally related to the claimant's injury, in *Aetna Casualty & Surety Co. v. McMichael, supra,* 906 P.2d at 103, the court stated:

In *Kohl,* we explained that in order to establish the requisite causal relationship between the use of the vehicle and the injury, the claimant must show that the accident would not have occurred but for the vehicle's use.... Although the use of 'but for' terminology suggests that the use of the vehicle must be the cause of the injuries, we have utilized a more liberal interpretation in our cases. We have not required that the vehicle be moving at the time of the accident or that the vehicle be the sole cause of the accident. In fact, we have interpreted the test as requiring the plaintiff to show only that the injury originated in, grew out of, or flowed from the use of a vehicle.... Thus, the causation test does not require that the insured vehicle itself be the source of the injury, only that the use be integrally related to the claimant's activities and the injury at the time of the accident.

Here, the motor vehicle was parked in a cross-hatched area of a parking lot such that it obscured the lighting used to illuminate a speed bump for pedestrians and other vehicles using the parking lot. Under these circumstances, in my view, this use of the vehicle is, as a matter of law, integrally related to the accident. Stated otherwise, the accident necessarily grew out of, or flowed from, the parking of the vehicle in this particular manner.

Contrary to the view of the majority, I do not read *State Automobile & Casualty Underwriters v. Beeson,* 183 Colo. 284, 516 P.2d 623 (1973) as applicable to the facts here. In *Beeson,* the manner in which the car was parked had no causal relationship with the unfortunate accident. Such is not the case here.

Accordingly, I would affirm the judgment of the trial court.